BARRETT v KIRTLAND COMMUNITY COLLEGE

Docket No. 217040. Submitted October 17, 2000, at Lansing. Decided April 10, 2001, at 9:00 A.M. Leave to appeal sought.

Brent Barrett brought an action in the Roscommon Circuit Court against Kirtland Community College, alleging, among other things, breach of contract and retaliation that violated the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, after his employment at the college was terminated. The plaintiff presented evidence at a jury trial that his employment was terminated before the expiration of a one-year employment contract and after he lodged with the president of the college and with the Michigan Department of Civil Rights complaints concerning his treatment by an immediate supervisor who discovered that the plaintiff was romantically involved with a college employee in whom the supervisor had expressed a romantic interest. The defendant presented evidence that the plaintiff was discharged for insubordination and for abandoning his position. The jury rendered a verdict in favor of the plaintiff with respect to the claims of breach of contract and retaliation under the CRA. Damages were awarded to the plaintiff by the jury on the retaliation claim and, pursuant to the parties' agreement, by the trial court, Michael J. Matuzak, J., on the breach of contract claim. The trial court denied the defendant's motion for judgment notwithstanding the verdict or for a new trial, and awarded costs and attorney fees to the plaintiff with respect to the retaliation claim. The defendant appealed.

The Court of Appeals *held*:

The trial court erred in denying the defendant's motion for judgment notwithstanding the verdict with respect to the claim of retaliation, but did not err in denying the defendant's motion for judgment notwithstanding the verdict or for a new trial with respect to the claim of breach of contract. The judgment for the plaintiff on the retaliation claim must be reversed and the award of attorney fees and costs in connection with that claim must be vacated. On remand, the trial court shall enter a judgment for the defendant with respect to the retaliation claim.

1. A plaintiff seeking to establish unlawful employment-related retaliation under subsection 701(a) of the CRA, MCL 37.2701(a),

must show, among other things, that the plaintiff's participation in activity protected by the CRA was a significant factor in the adverse employment action taken by the defendant. Here, although the plaintiff's filings of complaints with the Department of Civil Rights constituted protected activity, the plaintiff cannot establish a causal connection between the filings and the termination of his employment in view of evidence indicating that, before the plaintiff filed the complaints, the president of the college had already considered and recommended to the board of trustees that the plaintiff be fired for not accepting direction and responsibility and for having a poor attitude.

2. The plaintiff, in complaining to the president of the college about the supervisor's treatment of the plaintiff based on romantic jealously, did not make a charge under the CRA or oppose a violation of the CRA such that the plaintiff can establish that the defendant retaliated against him for making a charge or opposing a violation. The plaintiff did not make a charge under the CRA because he did not raise a specter of a claim of unlawful gender discrimination or sexual harassment by the supervisor when he complained of the way the supervisor treated him after the supervisor learned of the plaintiff's romantic involvement with the college employee. The plaintiff did not oppose a violation of the CRA in complaining about the supervisor's treatment because that treatment, being devoid of gender-based discrimination or sexual harassment, did not constitute "discrimination because of sex" under the CRA.

3. The defendant, in reporting to the police that the plaintiff had taken items owned by the college after his employment was terminated, did not retaliate against the plaintiff for filing complaints with the Department of Civil Rights. A causal connection between the plaintiff's filing of complaints and the defendant's reporting to the police is lacking because the plaintiff acknowledged that he took college-owned property and because of the defendant's interest in recovering its property.

4. The trial court did not abuse its discretion in excluding evidence of several incidents of the plaintiff's work-related misconduct. The decision to exclude such evidence was not palpably and grossly violative of fact and logic, given that the trial court correctly concluded that the evidence would be a waste of time and would likely confuse the jurors because the evidence that was admitted included enough evidence of the plaintiff's conduct to allow the jury to infer that the plaintiff was fired for poor job performance and insubordination.

Affirmed in part, reversed in part, and remanded.

1. CIVIL RIGHTS — CIVIL RIGHTS ACT — EMPLOYMENT — RETALIATION.

> A plaintiff seeking to establish a prima facie case of unlawful employment-related retaliation under the Civil Rights Act must show that the plaintiff engaged in a protected activity, that this was known by the defendant, that the defendant took an employment action adverse to the plaintiff, and that the plaintiff's participation in protected activity was a significant factor in the defendant's adverse employment action (MCL 37.2701[a]).

2. CIVIL RIGHTS — CIVIL RIGHTS ACT — EMPLOYMENT — DISCRIMINATION BECAUSE OF SEX.

> Employment discrimination because of sex, as proscribed by the Civil Rights Act, is limited to instances of gender-based discrimination or instances where the employee is required to submit to sexually-based harassment (MCL 37.2103[i], 37.2201[d], 37.2202[l]).

*Robert J. Krupka* and *Michael J. Forster,* for the plaintiff.

*Thrun, Maatsch and Nordberg, P.C.* (by *Martha J. Marcero* and *Roy H. Henley*), for the defendant.

Before: HOLBROOK, JR., P.J., and SAWYER and ZAHRA, JJ.

ZAHRA, J. Defendant Kirtland Community College (KCC) appeals as of right from an order denying its motion for judgment notwithstanding the verdict (JNOV) or a new trial. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### I. FACTS

Plaintiff was hired by KCC in February 1992 as part-time cultural events coordinator. In September 1992, plaintiff signed a one-year contract to serve as KCC's full-time coordinator of cultural events/activities. In September 1993, plaintiff signed another one-year contract to remain in that position. That second con-

tract was to expire on September 17, 1994. Plaintiff's duties as full-time coordinator of cultural events/activities included planning performances at KCC's theater, running the theater's box office, contracting with performers, producing shows at the theater, and completing accounting duties with respect to the performances. Plaintiff's coordinator position was not a faculty position.

Defendant Cary Vajda was KCC's dean of student services and plaintiff's immediate supervisor at all times pertinent to this case. Defendant Katherine Grosser was KCC's dean of business services and defendant Dorothy Franke was president of KCC during plaintiff's employment.[1]

In October 1993, Vajda asked KCC employee Allison Goshorn on a date. Vajda did not know Goshorn was romantically involved with plaintiff at the time he asked her out. Plaintiff claimed that the quality of his working relationship with Vajda declined once Vajda discovered the nature of Goshorn's relationship with plaintiff. As a result, plaintiff filed three complaints with the Michigan Department of Civil Rights (MDCR), charging gender discrimination and retaliation under the Civil Rights Act (CRA), MCL 37.2101 *et seq.* Plaintiff claimed that he suffered psychological and physical problems as a result of continual adverse treatment by Vajda. Those problems prompted plaintiff to take a personal leave from his job in May 1994 and a later unpaid leave under the Family Medical Leave Act (FMLA), 29 USC 2601 *et seq.* During the time plaintiff was on leave, the coordinator of cultural

---

[1] The parties eventually stipulated to dismiss defendants Vajda, Grosser, and Franke from plaintiff's suit and those individuals are not parties to this appeal.

events/activities position was reconfigured by KCC administrators into a faculty position.[2] Plaintiff applied for the new position, but was not hired. On September 13, 1994 (four days before the expiration of his employment contract), plaintiff returned from his leave and was discharged by Franke after a short meeting. In a letter Franke wrote to plaintiff on the date of his discharge, she stated that plaintiff's "[c]ontinued insubordination" and his "[a]bandonment of position" were the reasons for his discharge. Franke specified that plaintiff's insubordination included failing to return keys to KCC facilities despite being directed to do so on four separate occasions and refusing to provide proof of attendance at a meeting for which plaintiff sought travel expenses. Franke further specified that plaintiff abandoned his position by failing to return to work after his doctor indicated he was able to return on September 6, 1994, and by failing to notify KCC personnel to discuss returning to his job.

In October 1995, plaintiff filed this lawsuit, alleging breach of employment contract, violation of the FMLA, gender discrimination under the CRA, retaliation under the CRA, and defamation. Plaintiff's retaliation, breach of contract, and FMLA claims went to trial.[3] The jury found no violation of the FMLA. However, the jury found that KCC retaliated against plaintiff and assessed damages of $99,960 in regard to that claim. The jury also found that KCC breached plaintiff's employment contract. Pursuant to the parties' agreement, the trial

---

[2] That reconfiguration did not affect the duration of plaintiff's employment contract that was to expire on September 17, 1994.

[3] The other claims were dismissed pursuant to a motion for summary disposition and are not subject to this appeal.

court assessed damages in connection with the breach of contract verdict, determining damages in the amount of $750. KCC brought a motion for JNOV or, alternatively, for a new trial, arguing that there was no evidence of a causal link between protected activity by plaintiff and adverse actions taken by KCC, nor evidence that plaintiff was terminated without just cause or that his employment contract was otherwise breached.[4] The trial court denied KCC's motion. Thereafter, the court assessed $46,500 in attorney fees and $986 in costs with respect to the retaliation claim.

## II. LEGAL ANALYSIS

### A. RETALIATION IN VIOLATION OF MCL 37.2701(A)

On appeal, KCC argues that the trial court erred in denying its motion for JNOV with respect to plaintiff's retaliation claim. We agree.

A trial court's decision to grant or deny a motion for JNOV is reviewed de novo. *Attard v Citizens Ins Co of America*, 237 Mich App 311, 321; 602 NW2d 633 (1999); *Farm Credit Services of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 672; 591 NW2d 438 (1998). In reviewing a decision on a motion for JNOV, this Court must view the testimony and all legitimate inferences in the light most favorable to

---

[4] Defendant's only argument on appeal relating to the breach of contract claim is that the trial court erroneously excluded evidence that would have established that plaintiff's employment was terminated for cause. We note that defendant's argument below on a motion in limine and its argument on appeal regarding the effect of after-acquired evidence pertains only to damages on plaintiff's retaliation claim. Thus, we do not consider that argument in regard to plaintiff's breach of contract claim. As more fully set forth later in this opinion, we conclude that the trial court did not abuse its discretion by excluding the evidence defendant sought to introduce at trial.

the nonmoving party. *Forge v Smith,* 458 Mich 198, 204; 580 NW2d 876 (1998). If reasonable jurors honestly could have reached different conclusions, the jury verdict must stand. *Central Cartage Co v Fewless,* 232 Mich App 517, 524; 591 NW2d 422 (1998). Only if the evidence fails to establish a claim as a matter of law is JNOV appropriate. *Forge, supra.*

The CRA provides, in part:

> An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
>
> (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202(1)(a) and (b).]

The CRA also prohibits an employer from retaliating against an employee for pursuing rights under the CRA, stating:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701(a).]

1. CLAIMS OF PRETERMINATION RETALIATION

In the trial court, plaintiff asserted that his job was reconfigured and he was eventually discharged in retaliation for complaining to Franke about Vajda's adverse treatment of him and for filing complaints with the MDCR.[5] On appeal, KCC claims that plaintiff did not engage in protected activity under the CRA that could be said to have led to any adverse employment action.

We read the CRA in light of the primary goal of judicial interpretation, which is to ascertain and give effect to the intent of the Legislature. *Radtke v Everett*, 442 Mich 368, 386; 501 NW2d 155 (1993). If the plain and ordinary meaning of a statute is clear, judicial construction is neither necessary nor permitted. *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 166; 610 NW2d 613 (2000). We may not speculate about the probable intent of the Legislature beyond the words expressed

---

[5] While plaintiff claimed in the trial court that KCC's reconfiguration of the coordinator of cultural events/activities position and his discharge were both retaliatory actions taken by KCC that adversely affected plaintiff's employment, only plaintiff's discharge can form the legal basis of a retaliation claim. The reconfiguration of plaintiff's coordinator position to a faculty position did not affect plaintiff's employment. Plaintiff's employment contract was set to end September 17, 1994, and no action on the part of KCC other than plaintiff's discharge on September 13, 1994, precluded plaintiff from returning to his position before that date. See *Meyer v Center Line*, 242 Mich App 560, 569; 619 NW2d 182 (2000) (recognizing that an adverse employment action must be materially adverse and must have an objective basis for demonstrating that the change is adverse, "rather than the mere subjective impressions of the plaintiff.") Plaintiff also claims that Franke's failure to put a stop to Vajda's adverse treatment after she was informed of Vajda's alleged conduct was, itself, an adverse employment action. See *id.* at 569-571. Franke's inaction cannot serve as the basis for plaintiff's retaliation claim because, as will be discussed in greater detail, the conduct about which plaintiff complained to Franke did not fall within the scope of the CRA.

in the statute. *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995). If a statute provides its own glossary, the terms must be applied as expressly defined. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996). When reasonable minds may differ with respect to the meaning of a statute, the courts must look to the object of the statute and the harm it is designed to remedy and apply a reasonable construction that best accomplishes the purpose of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

In interpreting provisions of the CRA, we are guided by federal court interpretations of the counterpart federal statute. *Chambers v Trettco, Inc*, 463 Mich 297, 313; 614 NW2d 910 (2000); see title VII of the federal Civil Rights Act of 1964, 42 USC 2000e *et seq.*[6] While we are not bound by federal precedent based on title VII, those precedents analogous to questions presented under the CRA are persuasive and will be afforded substantial consideration by this Court. *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 437; 566 NW2d 661 (1997), citing *McCalla v Ellis*, 180 Mich App 372, 377-378; 446 NW2d 904 (1989). However, we are always primarily obligated when interpreting Michigan law to ascertain and give effect to the intent of the Michigan Legislature. *Chambers*, *supra* at 314. Therefore, while we may look for guidance in federal interpretations of similar laws, we must not defer to federal interpretations when doing

---

[6] Title VII prohibits discrimination in employment "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 USC 2000e-2(a)(1).

so would be inconsistent with any portion of our Legislature's enactment. *Id.*; *Chiles v Machine Shop, Inc*, 238 Mich App 462, 472-473; 606 NW2d 398 (1999).

This Court has interpreted the retaliation provision of the CRA, MCL 37.2701(a), to require that a plaintiff prove a prima face case by showing:

> (1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action. [*Meyer v Center Line*, 242 Mich App 560, 568-569; 619 NW2d 182 (2000), citing *DeFlaviis, supra* at 436.]

To establish causation, the plaintiff must show that his participation in activity protected by the CRA was a "significant factor" in the employer's adverse employment action, not just that there was a causal link between the two. *Jacklyn v Schering-Plough Healthcare Products Sales Corp*, 176 F3d 921, 929 (CA 6, 1999); *Polk v Yellow Freight System, Inc*, 801 F2d 190, 199 (CA 6, 1986).

### (a) RETALIATION BASED ON THE FILING OF FORMAL COMPLAINTS WITH THE MDCR

In the present case, plaintiff's conduct of filing complaints with the MDCR on March 11, 1994, May 12, 1994, and September 16, 1994, charging gender discrimination and retaliation was "protected activity" for purposes of a retaliation claim. See MCL 37.2701(a) (prohibiting retaliation "because the person has . . . filed a complaint . . . under this act"). These complaints became known to KCC. Subsequently, plaintiff's employment was terminated. Thus,

plaintiff presented sufficient evidence to satisfy the first three elements of his claim of retaliation. In order for plaintiff to prevail on his retaliation claim, he must establish causation.

The record is void of any evidence of causation with respect to the MDCR complaints. The undisputed evidence establishes that Franke considered discharging plaintiff and had definitely decided not to renew plaintiff's contract before plaintiff filed any of the three complaints. Plaintiff did not dispute Franke's trial testimony that she was the only KCC administrator with authority to discharge employees. A memo written by Franke, dated March 3, 1994, and sent to KCC's board of trustees, stated that plaintiff was having problems accepting direction and responsibility and had a generally "poor attitude." Franke specified: "If all this spells 'fire' to you, it does to me, also. . . . I can tell you for sure that I won't be recommending renewal for his contract which ends in September."[7]

---

[7] Franke testified that around the time she drafted the memo, she believed plaintiff's future at KCC was "dim." She acknowledged that her opinion of plaintiff was based, in part, on conversations she had with Vajda. We recognize that plaintiff alleged Vajda was motivated to lie about plaintiff's conduct. However, the mere fact that Vajda commented on plaintiff's conduct does not necessarily create an issue of fact. See *Krohn v Sedgwick James of Michigan, Inc*, 244 Mich App 289, 300-301; 624 NW2d 212 (2001) (holding that a stray remark by an employee not involved in the employer's decision to discharge the plaintiff cannot be attributed as proof of the employer's motivation for the discharge). Moreover, even assuming that Vajda lied to Franke regarding plaintiff's conduct, Vajda's lies were not, under plaintiff's own theory, motivated by plaintiff's complaints, but rather were motivated by his romantic jealousy. For reasons more fully set forth in this opinion, action based on romantic jealousy is not prohibited under the CRA and a retaliation claim based on such action cannot stand. Further, there was evidence that Franke relied significantly on her own experience and on the input of administrators other than Vajda in forming her opinion of plaintiff. Franke recalled that, in December 1993, administrators discussed plaintiff's lack of cooperation in regard to his incurring additional travel expense when returning from a

Given the content of that memo, plaintiff's filing of the MDCR complaints commencing on March 11, 1994, cannot be said to have been a "significant factor" in Franke's decision not to renew plaintiff's contract or to discharge plaintiff. See *Jacklyn, supra,* and *Polk, supra.* Consequently, those filings cannot form the basis of a retaliation claim. *Meyer, supra.*[8]

### (b) RETALIATION BASED ON AN ORAL COMPLAINT

The relevant question, therefore, is whether plaintiff engaged in any protected activity before Franke's drafting of the March 3, 1994, memo. Plaintiff presented evidence that soon after Vajda became

---

business trip. She also testified that she became involved in scheduling theater performances because the public was unhappy with prior performances put on by plaintiff. Franke further indicated that her opinion of plaintiff was affected by KCC controller Ed Koliba's experiences with plaintiff. Koliba testified at trial that plaintiff was "very uncooperative" when Koliba tried to work with him to establish an accounting system. Franke also testified that plaintiff's job assessment (presumably one compiled by Vajda) was "not very big" a factor in her termination decision. Franke made clear that plaintiff's insubordination in refusing her demand that he turn over his keys on the date he returned from his leave was the biggest factor in her decision to fire plaintiff. Testimony at trial established that KCC administrators sought return of the keys several times during plaintiff's leave and on the date that he returned to work because they were concerned with thefts of theater equipment. Franke specified that she did not consult Vajda directly before terminating plaintiff's employment.

[8] Plaintiff also argues that a letter dated May 3, 1994, from Vajda's attorney to plaintiff constitutes evidence of retaliation directly related to plaintiff's March 11, 1994, MDCR complaint about Vajda. Vajda's counsel claimed that plaintiff was spreading defamatory rumors about Vajda and demanded that plaintiff retract the statements. We conclude that this correspondence does not, as a matter of law, support a claim of retaliation in violation of MCL 37.2701(a). In order for plaintiff to prevail on a claim of retaliation he must establish that "the defendant took an employment action adverse to the plaintiff." *Meyer, supra.* Plaintiff did not present evidence that Vajda's counsel was acting on behalf of KCC (defendant) or that counsel's demand constituted an action that adversely affected plaintiff's employment situation.

aware of his relationship with Goshorn, Vajda severed direct communication with him, created new employment policies pertaining only to him, and enforced old policies that were not previously enforced with respect to other employees.[9] Plaintiff claims that he disclosed Vajda's adverse treatment to Franke during a meeting in January 1994. He contends that Franke's failure to put a stop to Vajda's adverse treatment of him was, itself, an adverse employment action sufficient to support a retaliation claim.

Plaintiff cannot prevail on a claim of retaliation in violation of the CRA without establishing that he engaged in activity protected under the act. *Meyer, supra.* MCL 37.2701(a) specifically defines the type of activity protected under the CRA. As it relates to this action, the CRA specifically prohibits retaliation or discrimination because "the person has opposed a violation of this act, or because the person has made a charge . . . under this act." Applying MCL 37.2701(a) to the facts of this case, we must determine whether plaintiff's oral complaint to Franke in January 1994 amounted to a charge made under the CRA or opposition to a violation of the CRA. We conclude that it did not.

### (i) PLAINTIFF DID NOT MAKE A CHARGE UNDER THE CRA

Plaintiff did not take any action that could be construed as a "charge" under the act. An employee need not specifically cite the CRA when making a charge

---

[9] Policies to which only plaintiff was allegedly subject included keeping detailed, daily time logs, returning college-owned equipment that he was using at his home, and complying with strict directives regarding travel expenses.

under the act. However, the employee must do more than generally assert unfair treatment. See *Mitan v Neiman Marcus*, 240 Mich App 679, 682; 613 NW2d 415 (2000) (holding complaints amounting to generic claims of "job discrimination" did not qualify as a charge made under the Persons with Disabilities Act, MCL 37.1101 *et seq.*). The employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to the CRA. *McLemore v Detroit Receiving Hosp & Univ Medical Center*, 196 Mich App 391, 396; 493 NW2d 441 (1992). Plaintiff's oral complaint to Franke in January 1994 failed to meet this standard. Plaintiff alleges unlawful discrimination because of sex.[10] According to plaintiff, he complained to Franke that Vajda had severely limited or closed the line of communication between Vajda and plaintiff. Plaintiff further claimed Vajda had implemented policies that were enforced only with respect to plaintiff. Plaintiff asserted Vajda's conduct changed after Vajda discovered plaintiff and Goshorn were involved romantically. Plaintiff never complained that he was subjected to any physical or verbal conduct of a sexual nature relating to either plaintiff or Goshorn. Nor did plaintiff complain that he was treated differently because of his gender. Under these circumstances, an objective employer could not conclude that plaintiff was raising the specter of a claim pursuant to the CRA. Rather, the evidence merely established that plaintiff was asserting generic, non-sex-based complaints regarding his

---

[10] Discrimination because of sex includes quid pro quo harassment, hostile environment harassment, and gender-based discrimination. See MCL 37.2103(i) and *Chambers, supra* at 310.

working conditions and that those complaints were not based on sex.

### (ii) PLAINTIFF DID NOT OPPOSE A VIOLATION OF THE CRA

Plaintiff claims he opposed a violation of the CRA. Specifically, he claims Vajda's alleged adverse treatment of him constituted discrimination based on sex, in violation of MCL 37.2202(1). The Legislature provided a nonexhaustive definition of the phrase "discrimination because of sex":

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
>
> (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.
>
> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(i).]

The definition section of the act also provides the following in regard to the term "sex": " 'Sex' includes, but is not limited to, pregnancy, childbirth, or a medical condition related to pregnancy or childbirth . . . ." MCL 37.2201(d).

This Court has held that the CRA is not so broad as to bar all conduct that is in any way related to sex. See *Barbour v Dep't of Social Services*, 198 Mich App 183, 185-186; 497 NW2d 216 (1993) (holding that the CRA does not prohibit discrimination based on sexual orientation). Moreover, federal courts have consistently held that sex-based discrimination prohibited in title VII refers to the conduct of requiring an employee to submit to sexually-based harassment as a condition of employment[11] or discrimination based on gender, not discrimination based on sexual affiliations or relationships. See *Succar v Dade Co School Bd*, 229 F3d 1343, 1345 (CA 11, 2000), *Taken v Oklahoma Corp Comm*, 125 F3d 1366, 1369-1370 (CA 10, 1997), *DeCintio v Westchester Co Medical Center*, 807 F2d 304, 306-308 (CA 2, 1986), cert den 484 US 825; 108 S Ct 89; 98 L Ed 2d 50 (1987), *Sullivan-Weaver v New York Power Authority*, 114 F Supp 2d 240, 243 (SD NY, 2000), *Prichard v Ledford*, 767 F Supp 1425, 1429 (ED Tenn, 1990), aff'd 927 F2d 605 (CA 6, 1991), and *Freeman v Continental Technical Services, Inc*, 710 F Supp 328, 331 (ND Ga, 1988); see also *Platner v Cash & Thomas Contractors, Inc*, 908 F2d 902, 905 (CA 11, 1990), and *Huebschen v Dep't of Health & Social Services*, 716 F2d 1167, 1172 (CA 7, 1983).

Limiting the phrase "discrimination because of sex" as used in the CRA to instances of gender-based discrimination or instances where the employee is required to submit to sexually-based harassment is consistent with the Legislature's nonexhaustive statu-

---

[11] Sexually-based harassment as a condition of employment refers to both quid pro quo harassment and hostile environment harassment. See *Chambers, supra* at 310.

tory definitions of that phrase, MCL 37.2103(i), and the term "sex," MCL 37.2201(d). Had our Legislature intended the CRA to protect against discrimination based on romantic jealousy, it could have expressly stated that intent within its statutory definitions. The Legislature did not so provide.

We do not read the CRA to prohibit conduct based on romantic jealousy. Michigan courts have long held that the CRA is remedial and must be liberally construed to effectuate its ends. *Reed v Michigan Metro Girl Scout Council*, 201 Mich App 10, 15; 506 NW2d 231 (1993), citing *Eide v Kelsey-Hayes Co*, 431 Mich 26, 34; 427 NW2d 488 (1988).[12] However, it is also fundamental that a liberal construction of an act must nonetheless be a reasonable construction that best accomplishes its purpose. See *Marquis, supra.* Interpreting the CRA's prohibition of discrimination based on sex to prohibit conduct based on romantic jealousy turns the CRA on its head. The CRA was enacted to prevent discrimination because of classifications specifically enumerated by the Legislature and to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases. *Radtke, supra* at 379; *DeFlaviis, supra* at 440. It is beyond reason to conclude that plaintiff's status as the romantic competition to the woman Vajda sought to date places plaintiff within the class of individuals the Legislature sought to protect when it prohibited discrimination based on sex under the CRA. See *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998) (stating that noth-

---

[12] We note that liberally construing a statute simply because the statute may be said to be remedial is of questionable logic. See Antonin Scalia, *Assorted Canards of Contemporary Legal Analysis*, 40 Case W Res L R 581, 581-586 (1990).

ing should be read into a statute that is not within the manifest intent of the Legislature as gathered from the act itself).

Plaintiff proceeded to trial on a theory of discrimination based on romantic jealousy. Plaintiff did not claim and the evidence did not establish that plaintiff was required to submit to sexually-based harassment as a condition of employment. Nor did the evidence presented at trial support a theory of gender-based discrimination. Plaintiff established, at most, that Vajda's alleged adverse treatment of plaintiff was based on plaintiff's relationship with Goshorn, not plaintiff's gender. Vajda may have had a romantic purpose in initially pursuing Goshorn and may, as the trial court surmised, have intended to eliminate plaintiff so that he could pursue Goshorn's affections. However, Vajda's alleged harassment was not conduct that is proscribed by the CRA because it was not gender-based. Indeed, if Vajda's motive was to win the affection of Goshorn, it would not matter if the person Vajda perceived to be standing in his way was male or female. See *Freeman, supra* at 331, n 2. As such, it is evident that plaintiff's gender was not the impetus for Vajda's alleged conduct, but rather was merely coincidental to that conduct. See *Succar, supra,* and *Huebschen, supra.*

Plaintiff did not, as a matter of law, establish that Vajda's adverse treatment of him constituted a violation of the CRA.[13] Accordingly, we conclude plaintiff

---

[13] Plaintiff also claims defendant's conduct of denying him access to the employee assistance program, rejecting his requests for mileage reimbursements, and requesting the return of keys while he was still employed were adverse employment actions taken after defendant had knowledge of his MDCR complaints. Even assuming without deciding such conduct constituted adverse employment actions, none of those actions form the

did not establish that KCC retaliated against him for opposing a violation of the CRA as required under MCL 37.2701(a). See *Chiles, supra* at 484.

### 2. CLAIM OF POSTTERMINATION RETALIATION

We next consider the validity of plaintiff's claim of posttermination retaliation. MCL 37.2701 protects former as well as current employees. *DeFlaviis, supra* at 440. After plaintiff's discharge, KCC administrators contacted the police when they noticed that several college-owned books and files were missing from plaintiff's office. Thereafter, plaintiff was arrested for larceny of KCC property. Because all criminal charges against plaintiff in connection with that incident were eventually dismissed, plaintiff asserted below that KCC's conduct of reporting him to the police constituted retaliation.

We conclude that plaintiff's claim for posttermination retaliation fails as a matter of law. Plaintiff acknowledged that he took several boxes of property from his office after his employment was terminated. Plaintiff did not challenge Vajda's testimony that after the boxes were seized by the police, they were found to contain hundreds of college directories and files and relatively few of plaintiff's personal items. Under these circumstances, there is not the requisite causal connection between plaintiff's protected activity of filing complaints with the MDCR[14] and KCC's posttermination action. Given KCC's strong interest in

---

basis of a valid retaliation claim because plaintiff has not shown that he was discriminated against because of sex under the CRA.

[14] As established earlier, plaintiff's filing of the MDCR complaints was the only protected activity under the CRA engaged in by plaintiff.

recovering its property, it is beyond reason to say that plaintiff's filing of the MDCR complaints was a "significant factor" in KCC's decision to report plaintiff to the police. See *Jacklyn, supra,* and *Polk, supra.* Moreover, there is no evidence plaintiff suffered any adverse employment action as a result of defendant's alleged posttermination action. *Meyer, supra.* In light of our conclusion that plaintiff's retaliation claim fails as a matter of law, we need not consider the merit of KCC's remaining issues challenging that claim.

### B. EVIDENTIARY MATTERS RELATING TO THE BREACH OF CONTRACT CLAIM

The only issue remaining for our consideration involves KCC's argument that the trial court erred in excluding evidence at trial. Given our disposition of the prior issue, we need only consider this issue in the context of plaintiff's breach of contract claim.

KCC argues that the trial court erred in excluding evidence of several incidents of plaintiff's work-related misconduct. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Chmielewski v Xermac, Inc,* 457 Mich 593, 614; 580 NW2d 817 (1998). An abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences perversity of will, a defiance of judgment, or the exercise of passion or bias. *Dacon v Transue,* 441 Mich 315, 329; 490 NW2d 369 (1992); *Hottmann v Hottmann,* 226 Mich App 171, 177; 572 NW2d 259 (1997). While the several work-related incidents cited by KCC would have been relevant to explain why its administrators developed a poor opinion of plaintiff as an employee, we cannot say that the trial court's

decision to exclude the evidence was palpably and grossly violative of fact and logic. Franke testified at trial that her poor opinion of plaintiff was based on her personal experiences dealing with plaintiff as well as input from other administrators. There was also substantial testimony that plaintiff was uncooperative and often refused direct orders. While jurors were not apprised of all the incidents that may have led to the administrators' poor opinions of plaintiff, they heard enough evidence of plaintiff's conduct to infer that his poor job performance and inability to follow orders were the main reasons for his discharge. Given that the case involved considerable testimony on several separate incidents, the trial court acted within its discretion when it concluded that additional testimony regarding the prior events would waste the court's time and would likely confuse the jurors. MRE 403.[15]

KCC has provided no other argument in regard to the breach of contract judgment. Accordingly, we cannot say that judgment was erroneous.

### III. CONCLUSION

In sum, plaintiff's entire retaliation claim fails as a matter of law and the trial court erred in denying KCC's motion for JNOV on that claim. The judgment for plaintiff on the retaliation claim is reversed and attorney fees and costs assessed in connection with that claim are vacated. On remand, the trial court shall enter a judgment for KCC on the retaliation claim. The

---

[15] Insofar as KCC argues that the trial court erred in excluding evidence of plaintiff's resume fraud and a letter Vajda wrote to his attorney, there is no need to consider those arguments because they involve plaintiff's retaliation claim, which we have rejected.

judgment with respect to plaintiff's breach of contract claim is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.